## LAUDERDALE CO. *v.* FOSTER.

*(Circuit Court, W. D. Tennessee. April 9, 1885.)*

JURISDICTION—EQUITY—SET-OFF—STATE AND FEDERAL JUDGMENTS.

The relation between the state and federal courts imposes a restriction upon the equity powers of either in setting off a judgment of the one against a judgment of the other. Where, therefore, a federal court of equity is asked to set aside the satisfaction of a state judgment at law or to determine equitable defenses to that judgment, as a preliminary to a decree of set-off against a judgment of the federal court itself, the parties will be sent to a state court of competent jurisdiction to settle their controversy, and in the mean time the federal judgment will be stayed.

In Equity.

*Metcalf & Walker* and *Thomas Steele,* for plaintiff.

*Myers & Sneed,* for defendant.

HAMMOND, J. The defendant holds the balance of a judgment at law in this court against the plaintiff, which, after adjusting the matter of credits claimed in the manner indicated by the court, on consideration of the master's report, amounts to $2,052.83. This judgment he is seeking to enforce by *mandamus.* The plaintiff claims a judgment against the defendant in the circuit court of Lauderdale county for $1,870.51. This bill is filed to set off one judgment against the other, and to adjust certain disputes as to credits claimed by the plaintiff and denied, which latter feature has been determined on exceptions to the master's report, and need not be further noticed. It alleges that the defendant is insolvent, and that the plaintiff has no opportunity to enforce its judgment by execution. There would be no doubt about the plaintiff's right to this relief, and no difficulty in granting it, but for the fact that on the records of the state court the judgment appears to have been "satisfied" by a levy upon and sale of defendant's land under an execution which issued on the judgment. 3 Meigs' Dig. (2d Ed.) § 2490. The bill states this, and seeks to avoid its effect by invoking the equitable powers of this court to set aside the entry of satisfaction, because, as is alleged, the sale was void, and the plaintiff took no title to the land, by reason of certain irregularities and defects which the bill points out. 1 Meigs' Dig. (2d Ed.) § 516; 2 Meigs' Dig. § 1753. It further alleges that the plaintiff disclaims all title under the execution sale; that, because the pro-

ceeding was void, it has never taken any steps to recover possession; that the defendant remains in possession, and has mortgaged the land for its full value; and that the mortgage would now absorb the property, on which the judgment is not now a lien, the statutory time for the lien having long since expired.

The answer of defendant neither admits nor denies the invalidity of the sale, but insists that the plaintiff must stand by its title to the land; that the proof shows there is no judgment, it having been satisfied of record; and that the plaintiff, having appropriate remedies to recover possession, cannot now claim further satisfaction through a set-off. It also sets up certain equitable defenses against the judgment, arising out of the fact that, under our state revenue system, it was procured against defendant as a surety on the county tax collector's bond, in a summary way, without any notice to him, and only on notice to the defaulting collector, and that, under those statutes, as such surety, he was entitled to certain advantages and privileges which have been denied to him by the plaintiff, whereby the judgment itself is void; and a court of equity will not enforce it.

The court concedes very fully the principle that equity, in exercising its powers to set off one judgment against another, requires that the plaintiff's judgment must be a subsisting claim capable of enforcement, and that if there be any obstruction to it the court will not interfere, but leave the parties to their mutual legal rights. Wat. Set-off, p. 380, §§ 349–355. But this must be understood as subject to the power of a court of equity to inquire into and remove the obstruction in a proper case for equitable jurisdiction in that behalf. Id. If this case were in the equity court of the state, and both judgments were those of the state court of law, or if both judgments were those of a federal court, neither court of equity could have any difficulty in deciding the question here raised. If a proper case has been made for the plaintiff, the satisfaction would be set aside, the judgment reinstated, and the set-off declared; or, on the other hand, if there be any validity in the equitable defenses set up by defendant, the court would give effect to them by refusing the set-off and restraining by injunction any further vexation on account of a void judgment. Thus complete equity would be meted out to these parties.

As it is, however, this federal court of equity has no jurisdiction to scrutinize the records of a state court, correct them by setting aside an entry of satisfaction appearing thereon, and adjudicating upon the validity of the proceedings, to bind these parties in a matter like this. Of course it could, whenever the matter came up in litigation, determine whether any title to the land had passed or any controversy over or involving the title; but that is not what we are asked to do; we are asked to vacate a satisfaction of record, re-establish a judgment of a state court, and satisfy it by a set-off; which, I think, we cannot assume to do. On the other hand, neither can we inquire into and

adjudicate upon the equitable defenses set up in behalf of defendant to the judgment, for the same reason precisely, and because we are forbidden by statute to enjoin a state judgment or execution. Rev. St. § 720. This statute is the declaration of a principle which, necessarily, must prevail to preserve harmony in our system of government, and substantially controls this court to refuse its relief both to the plaintiff and defendant in this matter of dealing with the state judgment. So, too, the state court of equity cannot enjoin the federal judgment we have here, or otherwise interfere with it.

At first it seemed to me that the logical but unfortunate result of this situation would be to dismiss this bill; but on reflection I am satisfied that would be wrong. It would defeat the plaintiff in the collection of its debt, for which it already has a judgment, and *prima facie* a valid one, if it has not been satisfied. It would allow an insolvent debtor, while still in possession of the land sold under execution, to keep the land and deny the debt, and by a mortgage to displace the judgment, levy, and sale. The defendant would collect his money from the plaintiff and render its claim against him fruitless, no matter how just, for this is all with which he has to pay. However, the accidents of this particular case should not control our judgment here. The true principle is that our duplex system of government has imposed upon our state and federal courts of equity, in their relation to each other in this matter of dealing with judgments at law, restrictions upon their respective equitable powers which otherwise would not exist. To do complete equity between the parties here, for example, requires essentially the concurrent and co-operative action of both a state and federal court, while, under ordinary circumstances, either court could give full relief. By sending these parties to the state courts, to take within a reasonable time such action as they may be advised to settle their controversy over the state judgment, we do no violence to the comity between the courts, and usurp no intolerable jurisdiction; while, in the mean time, we can stay our own judgment and await a settlement of that controversy in a court of competent jurisdiction. But since the defendant's judgment against the plaintiff must be collected by taxation, which, under our process, is a very slow proceeding, I do not think it proper to delay the levy and collection of the money, but direct that it shall be paid into the registry of the court, to be invested and held for the party to whom we may ultimately decree it. The only objection is that this may be imposing a tax on the county which it possibly need not levy, but that is largely its own fault in not sooner taking the necessary steps to vacate the satisfaction of its judgment. Besides, the sum is not large, and if the money goes back into its treasury, it will be in exoneration of future taxes, and no great harm is done. The surplus must, of course, be paid to defendant. Either party may have leave to apply for further directions. Decree accordingly.